IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 12, 2005

### STATE OF TENNESSEE v. TERRY WAYNE MITCHELL

**Direct Appeal from the Criminal Court for Overton County**
**Nos. 5504 & 5505     Lillie Ann Sells, Judge**

---

**No. M2004-00721-CCA-R3-CD - Filed May 10, 2005**

---

The Defendant, Terry Wayne Mitchell, pled guilty to burglary of an automobile and theft of property over $500.00, in case number 5504, and possession of a schedule IV controlled substance, in case number 5505. The trial court sentenced the Defendant to three years and six months, as a Range II offender, for each of the convictions in case 5504, and it sentenced the Defendant to eleven months and twenty-nine days for the conviction in case 5505. The trial court further ordered that the two sentences in case 5504 would be served consecutively, and the sentence in 5505 would run concurrently. On appeal, the Defendant contends that: (1) the trial court erred by not recusing itself; and (2) the trial court erred when it sentenced the Defendant. After a thorough review of the record, we affirm the Defendant's convictions and sentences.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which THOMAS T. WOODALL, and JOHN EVERETT WILLIAMS, JJ., joined.

Bruce E. Myers, Livingston, Tennessee, for the appellant, Terry Wayne Mitchell.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; William E. Gibson, District Attorney General; and Owen Burnett, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION
### I. Facts

This case arises from the Defendant's guilty pleas in two separate cases. The Defendant pled guilty to burglary of an automobile and theft of property over $500.00, in case number 5504, and he pled guilty to possession of a schedule IV controlled substance, in case number 5505. At the guilty plea submission hearing on both cases 5504 and 5505, the State offered a statement of facts, to which the Defendant agreed. According to the facts presented, Sergeant Christopher Halfacre, of the Livingston Police Department, was leaving the hospital and walking to his truck when he witnessed

the Defendant removing items from Sergeant Halfacre's truck. Sergeant Halfacre found the Defendant with bolt cutters in one hand and a chain in the other, both of which the Defendant had removed from the sergeant's truck. Sergeant Halfacre called the police, and, when the police searched the Defendant pursuant to the arrest, they found six pills of Diazepam, or Valium, a schedule IV controlled substance. The plea agreement provided that the sentences in case 5504 would run concurrently with the sentence in case 5505, but the duration of the sentences and whether the two sentences in case 5504 would run concurrently or consecutively, were to be decided by the trial court after a sentencing hearing. The Defendant filed a motion for recusal of the trial court judge, which the trial court denied.

The sentencing hearing was conducted on portions of four dates: November 25, 2003; January 21, 2004; February 26, 2004; and March 5, 2004. At the sentencing hearing, the following evidence was presented: Brendia King testified that she is the probation and parole officer who prepared the Defendant's pre-sentence report. She testified that, Sergeant Halfacre, the victim, objected to the Defendant's being placed on house arrest. King noted that the Defendant's conduct neither threatened nor caused seriously bodily injury. She also said that she found two enhancing factors present in the Defendant's case, namely, that the Defendant has an extensive prior record of criminal convictions and behavior, and the Defendant has a history of unwillingness to comply with the conditions of a sentence involving release into the community. King explained that the Defendant previously had his probation in Tennessee revoked and, separately, had his federal probation revoked. She recounted that the Defendant has numerous adult convictions and two juvenile DUI convictions. She said that the Defendant advised her of numerous health problems, including tuberculosis, chronic obstructive pulmonary disease, asthma, hepatitis C, degenerative disc disorder, anti-social personality disorder, and anxiety disorder. The Defendant also provided King with documentation of two prescriptions for Hydrocodone and Diazapam, and he informed King that he was prescribed other medications as well. King testified that the Defendant told her that he had been through alcohol and drug treatment on two previous occasions. King also said that the Defendant admitted to her that he had smoked marijuana a few weeks before the interview, and he had previously taken Tylox, a prescription painkiller, without a prescription. King said that the Defendant reported that he is currently unemployed, and he has applied for social security disability assistance, but he has not yet begun to receive it.

On cross-examination, King admitted that, subsequent to her investigation, she received a copy of a letter from the Social Security Administration ("SSA") stating that the Defendant was entitled to disability benefits. She testified that the SSA letter stated the SSA investigation found that the Defendant suffered from the conditions he reported. King affirmed that the Defendant told her that he is illiterate and that he is his elderly mother's caretaker, and King stated that she had no information to contradict these statements. King testified that both hepatitis C and tuberculosis are highly contagious diseases. She could not remember receiving a letter from Dr. Cox, the Defendant's mother's treating physician, that affirmed that the Defendant was his mother's care-giver. King admitted that, in her dealings with the Defendant, she noticed that he had difficulty breathing.

The Defendant testified that he was forty-one years old at the time of the hearing, and he

could not read or write, except his name. He testified that he suffered from tuberculosis, chronic obstructive pulmonary disorder, asthma, hepatitis C, anti-social personality disorder, degenerative disc disease of the lumbar spine, and anxiety disorder. He explained that he has two ruptured discs and arthritis in four or five joints in his spine. The Defendant said that he has been unable to work since December of 2000. He affirmed that he had been approved for SSA disability benefits, but had not yet begun receiving them. The Defendant stated that his mother is hospitalized because she suffers from breathing problems and "some kind of joint disease that [makes] your muscles deteriorate." The Defendant said that his mother is unable to care for herself, and he is the only person who is willing or able to take care of her. He stated that his mother's doctor, Dr. Cox, said she will not live much longer. The Defendant agreed that he has an extensive criminal record, but he is "done with the criminal justice system." He testified that he and his mother are dying, and, if placed on house arrest, he would be able to care for her and make amends for his crimes. The Defendant said that his mother's SSA disability check is his family's only income. He said that he understood that, if placed on house arrest, the police department would frequently check on him to ensure that he was abiding by the law and the rules of his alternative sentence. The Defendant testified that he takes Diazapam for his anxiety and muscle spasms, and he takes Hydrocodone for pain related to his back problems. He said that he has three different inhalers, Albuterol, Combivent, and Atrivent, and he uses a breathing machine four times a day, sometimes more if his breathing becomes particularly difficult.

On cross-examination, the Defendant admitted that he has two prior convictions for burglarizing businesses. He said that, when he took the log chain out of Sergeant Halfacre's truck, he intended to get a log chain out of a truck belonging to Brad Kensler. He recalled that he realized he was taking the item from the wrong truck when the sergeant approached him, and he informed the sergeant of his mistake. He testified that he was taking Diazapam at the time, and, therefore, "didn't know what [he] was doing," and he should have been able to distinguish between the two trucks. The Defendant did not recall having bolt cutters or a log chain in his hand when Sergeant Halfacre approached him. He said that the items he took from the truck were already in his vehicle, and he immediately returned them to the sergeant. The Defendant did not remember taking veterinary supplies or a coat from Sergeant Halfacre's truck.

Felicia Mitchell, the Defendant's ex-wife, testified that she lives with the Defendant and his mother. She testified that she is not employed, but she takes care of the Defendant and his mother. Mitchell said that she is aware of the Defendant's health problems. She explained that the Defendant cannot sit or stand for long durations because he will become short of breath. Mitchell said that, if the Defendant was placed on house arrest, she would ensure that the Defendant abided by the rules of his sentence, or she would "call the law on him [her]self."

Following this evidence, the trial court found that the following statutory enhancement factors were applicable: (1) that the Defendant had a history of criminal convictions and criminal behavior in addition to those necessary to establish the appropriate range; and (2) that the Defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release into the community. Tenn. Code Ann. § 40-35-114(2) and (9) (2003). The trial court also

considered, as mitigating factors, that the Defendant's conduct did not threaten or cause serious bodily injury, and the Defendant's poor health. The trial court stated:

> [T]he court has taken into consideration and has found . . . as an enhancement factor the extensive criminal record in this case. And as I said, that he's previously been given the opportunity to be placed on different kinds of, if you look through this pre-sentence report, all kinds of different opportunities to be placed back in the community and something less than incarceration.
>
> The court assigns a great amount of weight to these two enhancement factors and the court makes the following finding as to mitigating factors.
>
> The court finds that the [D]efendant's conduct as to this offense, this auto burglary and theft of property . . . neither caused nor threatened to cause serious bodily injury. That's the mitigating factor that is found in this sentencing hearing.
>
> Also the court finds and has considered the [D]efendant's medical condition in conjunction with this sentencing hearing today.
>
> The fact that the [D]efendant, what he was doing at the time did not cause or threaten any serious bodily injury is given some weight, but not a tremendous amount of weight in light of the [D]efendant's criminal history.
>
> Also, the court has considered his medical record, which looking at the Social Security history here, this [D]efendant's medical problems began before this offense was committed, which indicates to this court even with the medical problems that he has, he's still gone out into the community and commit[ed] offenses. That's a grave concern to this court and I have considered that as well in this sentencing hearing today.

Regarding the imposition of consecutive sentences, the trial court found as follows:

> The court finds in this case that the [D]efendant is a professional criminal who has knowingly devoted his life to criminal acts. And I find that based on this record here.
> When we go back and look at this criminal history of [the Defendant], [the Defendant] starts out as a juvenile and he goes on and on and on. And it's so unfortunate . . . .
>
> But when you look at the opportunities that this [D]efendant has been given, again and again . . . .
>
> And I know in here that he entered some sort of drug treatment and has gone on and

on and his medical problems, but even through all that he continues to smoke marijuana, he continues to commit criminal offenses . . . .

. . . .

This court, in considering whether or not the [D]efendant would be placed in the community on some form of supervised probation or something less than incarceration is considering, has considered the following:

I considered the pre-sentencing report; I considered his physical and mental condition and social history; I considered the facts and the circumstances surrounding this particular offense and the nature of the conduct involved in this particular case.

The court has considered the prior criminal history of the [D]efendant; has considered the previous actions and the character of the defendant.

You know, one of the things that I considered in this decision today was the fact that I heard from the officer in this case, who basically caught [the Defendant] in the act there in this theft and auto burglary. And then, [the Defendant], who doesn't take very much responsibility for his actions. Most unfortunate that, that he can't take responsibility for his own conduct.

The trial court went on, finding that the Defendant was not likely to benefit from rehabilitation, and the Defendant would not likely abide by the terms of probation. The trial court found that probation would "depreciate the seriousness" of the Defendant's crime, and probation was inappropriate for a Defendant "who in looking at this record has time and time again been given the opportunity to be out in society and not do anything but lead a productive life but yet cannot seem to do that."

The trial court then sentenced the Defendant to three years and six months for each of the two class E felony convictions, in case number 5504, and eleven months and twenty-nine days for the misdemeanor conviction, in case 5505. Further, the trial court ordered that the sentences in case 5504 run consecutively to one another, but concurrently with the sentence in case 5505, for an effective sentence of seven years. The trial court ordered that the Defendant be placed on house arrest until a bed became available for the Defendant to serve his sentence in a special-needs facility.

## II. Analysis

On appeal, the Defendant contends that: (1) the trial court erred in not recusing itself; and (2) the trial court erred when it sentenced the Defendant. Finding no error in the judgments of the trial court, we affirm the Defendant's convictions and sentences.

## A. Recusal of Trial Judge

The Defendant asserts that the trial court erred when it denied his motion requesting that the trial court recuse itself from the Defendant's case. The Defendant contends that the trial court judge's prior marriage to the Defendant's ex-wife's uncle, who was also the Defendant's second cousin, created an appearance of impropriety. The trial court denied the motion, stating:

I've never met this [D]efendant before in my life. I don't know [the Defendant] and I don't know [his ex-wife].

. . . .

[I]f I recuse myself on every case that I've heard of individuals and some ex-husband related to a first cousin, etc., etc., then I would doubt that, I don't think that's the standard at all.

I will, for the record, recuse myself in any case and I have recused myself in cases where I was familiar with the parties and was close to them or knew them and where there would be some sort of conflict. I don't know either of these parties, I don't know [the Defendant] . . . . I would imagine it's been since the late 70's since I lived here in Overton County and knew any of the people that were related to my, or had any contact with people that were related to my first husband. So I don't have conflict in this case . . . .

A trial judge should recuse himself or herself whenever the judge has any doubt as to his or her ability to preside impartially or whenever his or her impartiality can reasonably be questioned. State v. Pannell, 71 S.W.3d 720, 725 (Tenn. Crim. App. 2001). This is an objective standard. Alley v. State, 882 S.W.2d 810, 820 (Tenn. Crim. App. 1994). "Thus, while a trial judge should grant a recusal whenever the judge has any doubts about his or her ability to preside impartially, recusal is also warranted when a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality." Id. The trial judge retains discretion over his or her recusal. State v. Smith, 906 S.W.2d 6, 11 (Tenn. Crim. App. 1995). Unless the evidence in the record indicates that the failure to recuse was an abuse of discretion, this court will not interfere with that decision. State v. Hines, 919 S.W.2d 573, 578 (Tenn. 1995).

In the case under submission, we conclude that the trial court did not abuse its discretion when it denied the Defendant's motion to recuse. The record reflects that the trial court considered the Defendant's motion and her prior associations with the Defendant's family, and the court concluded that there was no reason that it would be unable to preside over the case with impartiality. Further, the court determined that an ordinary person would not feel that the court had reason to be less than impartial. This issue is without merit.

**B.  Sentencing**

The Defendant contends that the trial court improperly ordered that his sentences run consecutively, and the trial court imposed an excessive sentence.  Specifically, the Defendant asserts that the trial court erred by "not starting his sentences at the low end of the range that he was in . . . ."  The State counters that the Defendant's sentence is not excessive, and the trial court properly ordered the Defendant's sentences to run consecutively in accordance with Tennessee law.

When a defendant challenges the length, range or the manner of service of a sentence, it is the duty of this Court to conduct a de novo review of the record with a presumption that "the determinations made by the court from which the appeal is taken are correct."  Tenn. Code Ann. § 40-35-401(d) (2003).  This presumption is "'conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances.'"  State v. Ross, 49 S.W.3d 833, 847 (Tenn. 2001) (quoting State v. Pettus, 986 S.W.2d 540, 543 (Tenn. 1999)); State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing a defendant or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Dean, 76 S.W.3d 352, 377 (Tenn. Crim. App. 2001); State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994).  In conducting a de novo review of a sentence, we must consider: (a) any evidence received at the trial and/or sentencing hearing; (b) the presentence report; (c) the principles of sentencing; (d) the arguments of counsel relative to sentencing alternatives; (e) the nature and characteristics of the offense; (f) any mitigating or statutory enhancement factors; (g) any statements made by the defendant on his or her own behalf; and (h) the defendant's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. § 40-35-210 (2003); State v. Taylor, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001).  The party challenging a sentence imposed by the trial court has the burden of establishing that the sentence is erroneous.  Tenn. Code Ann. § 40-35-401(d), Sentencing Comm'n Cmts.

In the case under submission, we conclude that there is ample evidence that the trial court considered the sentencing principles and all relevant facts and circumstances.  Therefore, we review its decision de novo with a presumption of correctness.  Accordingly, so long as the trial court complied with the purposes and procedures of the 1989 Sentencing Act and its findings are supported by the factual record, this Court may not disturb this sentence even if we would have preferred a different result.  See Tenn. Code Ann. § 40-35-210, Sentencing Comm'n Cmts; State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

In calculating the sentence for a Class E felony conviction, the presumptive sentence is the statutory minimum for a Range II offender if there are no enhancement or mitigating factors.  See Tenn. Code Ann. § 40-35-210 (c).  If there are enhancement but no mitigating factors, the trial court may set the sentence above the minimum, but still within the range.  Tenn. Code Ann. § 40-35-210(d).  A sentence involving both enhancement and mitigating factors requires an assignment of relative weight for the enhancement factors as a means of increasing the sentence.  Tenn. Code Ann.§ 40-35-210(e).  The sentence must then be reduced within the range by any weight assigned

to the mitigating factors present. Tenn. Code Ann. § 40-35-210(e).  The sentence range for a Range II offender for a class E felony is not less than two years or more than four years.  Tenn. Code Ann. § 40-35-112(b)(5) (2003).

In this case, the record clearly supports the trial court's enhancement of the Defendant's sentence by one year and six months.  The record demonstrates that the Defendant has numerous criminal convictions, and has had his probation or parole revoked on two separate occasions for subsequent criminal convictions.  The trial court thoroughly analyzed and considered the relevant enhancing and mitigating factors and followed the statutory guidelines in imposing the Defendant's sentence.  The trial court concluded:

> The court in this case, based on the sentencing law that I just stated and based on the weight that I have given to the enhancing factors, I start at the end of the scale or the bottom of the scale in a class E felony and I'm looking first to a class E felony, it's a range two beginning at two years and going to four years and it's a thirty-five percent sentence.  When I go to the bottom of that range, coming up then, working up with enhancing factors, the enhancing factors which this court has found, that this [D]efendant has extensive criminal history, that he's previously been placed in the community and has not been able to conform to the community, the requirements, . . . this court has considered all that and places a great deal of weight in this sentencing hear[ing] today, as I think I should under the statute . . . .  And due to the extensiveness of this record, there's just nothing else the court can do.

We conclude that the trial court did not err when it sentenced the Defendant.  The Defendant's prior criminal history clearly supports the sentence enhancement in this case.[1]

Further, the court did not err in imposing consecutive sentences.  Pursuant to Tennessee Code Annotated section 40-35-115(a) (2003), if a defendant is convicted of more than one criminal offense, the court shall order the sentences to run either consecutively or concurrently.  The trial court may order sentences to run consecutively if the court finds by a preponderance of the evidence that one or more of the seven criteria enumerated in Tennessee Code Annotated section 40-35-115(b) apply.  If none of the criteria in subsection (b) apply, the "[s]entences shall be ordered to run concurrently . . . ."  Tenn. Code Ann. § 40-35-115(d).  One criterion listed in Tennessee Code Annotated section 40-35-115(b) is that the "defendant is an offender whose record of criminal activity is extensive."  Tenn. Code Ann. § 40-35-115(b)(2).  The trial court found, and repeatedly stated, that the Defendant had an extensive criminal history.  The court also found that the Defendant

---

[1]Although the Defendant's brief on appeal to this Court does not specifically argue that the Defendant's sentence violates the United States Supreme Court mandate in Blakely v. Washington, 124 S.Ct. 2531 (2004), this Court has previously employed a Blakely analysis under facts similar to those in the case at bar.  We do not, however, employ a Blakely analysis in this case in light of the Tennessee Supreme Court's recent opinion in the case of State v. Gomez, __ S. W. 3d ____ (Tenn. 2005) (holding that the sentencing scheme provided by Tennessee's Sentencing Reform Act of 1989 is a non-mandatory, discretionary sentencing scheme and, in turn, does not violate the Sixth Amendment right to a jury trial).

was a career criminal, another factor that supports the imposition of consecutive sentences. <u>See</u> Tenn. Code Ann. § 40-35-115(b)(1). The Defendant has failed to prove that the evidence preponderates against these findings. Accordingly, we find no error in the consecutive nature of the Defendant's sentences. This issue is without merit.

### III. Conclusion

We note that there are some clerical errors in the judgment for count one, in case number 5504, for the Defendant's burglary of an automobile conviction. Therefore, we remand for entry by the trial court of an amended judgment reflecting the following: that the Defendant was represented by appointed counsel, not retained counsel, and that the Defendant was convicted and sentenced as a Range II multiple offender, with a release eligibility of 35%. In accordance with the foregoing reasoning and authorities, we affirm the judgments of the trial court.

_____
ROBERT W. WEDEMEYER, JUDGE